IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| STATE OF MARYLAND, | * |
| Plaintiff, | * |
| v. | * |
|  | *   Civil No. 24-3699-BAH |
| CHARLES SMITH, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Charles Smith ("Smith" or "Defendant") is charged in state court with serious offenses, including murder in the first degree and hate crimes, for an alleged shooting that happened in June 2023 in Annapolis, Maryland. In preparation for a trial that is set to begin on February 7, 2025, Smith's counsel, attorneys from the Office of the Public Defender ("PD's Office"), dutifully and zealously sought evidence in support of the defense Smith intends to present at trial. In preparing for that trial, Smith's state defenders learned of evidence related to victims and witnesses relevant to Smith's defense. The state defenders believed this evidence was in the possession of the Federal Bureau of Investigation ("FBI"). The state defenders first turned to the State's Attorney for Anne Arundel County (AAC-SAO) to get this evidence, as the AAC-SAO was the office prosecuting Smith's alleged offenses. The AAC-SAO in turn sought the requested information from the FBI by lodging a *Touhy* request.[1] They ultimately received some, though not all, of what the state

---

[1] Under *United States ex rel Touhy v. Ragen*, the United States Supreme Court recognized the authority of federal agencies to promulgate certain types of regulations under 5 U.S.C. § 301, known as the Housekeeping Act. 340 U.S. 462 (1951). "These DOJ regulations, otherwise known as *Touhy* regulations, guide agency decisions pertaining to disclosures but do not itself provide a substantive defense to disclosure." *Gulluni v. Levy*, 85 F.4th 76, 82 (1st Cir. 2023) (citing 28

defenders had asked for. The AAC-SAO promptly gave Smith's state defenders all that the AAC-SAO received from the FBI. Upon learning that they did not get all they asked for, Smith's state defenders went straight to the FBI and made a similar *Touhy* request to the one previously made by the AAC-SAO. Again, the FBI exercised its discretion to not disclose all the information requested and provided the state defenders with a written explanation of its choice. Understandably unhappy with that decision, Smith's defenders then turned to the judge of the Circuit Court for Anne Arundel County presiding over Smith's state criminal trial, who eventually issued an order compelling the FBI to provide the information and testimony requested by Smith's defense team. It is this state court order, and the three subpoenas issued pursuant to that order, that now bring this case to federal court.

The United States of America, on behalf of the FBI, brought suit against Smith seeking permission to disregard the state subpoenas and order directed to current or former employees of the FBI compelling the production of documents and possible trial testimony regarding an ongoing FBI investigation into victims of, and witnesses to, Smith's alleged crimes. Pending before the Court is the FBI's motion to quash ("the Motion"), ECF 3, in which the FBI moves to quash the state judge's order and three subpoenas. *Id.* at 1. Smith filed an opposition, ECF 8, and the FBI filed a reply, ECF 10. All filings include memoranda of law, and the Motion includes exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary.[3] *See* Loc. R.

---

C.F.R. §§ 16.21-16.29). Under *Touhy*, the head of an agency may "prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers, and property appertaining to' the Department of Justice[.]" *Touhy*, 340 U.S. at 469.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] The Court held an on-the-record call related to the Motion on January 28, 2025, *see* ECF 12, with counsel for Smith, counsel for the FBI, and representatives of the AAC-SAO. Though all parties

105.6 (D. Md. 2023). Though Smith's public defenders have adequately presented a need for the requested information, they provide no authority for the Court to disregard mountains of case law affirming the position taken by the FBI. It is clear that sovereign immunity prevents federal agencies from being compelled to respond to subpoenas issued by a state court. It is also clear that the sole remedy for challenging a *Touhy* request denial is a lawsuit filed pursuant to the Administrative Procedure Act (APA). Accordingly, for the reasons stated below, the Court is constrained to **GRANT** the Motion.

## I.   BACKGROUND

As noted, this case arises out of Smith's attempt to subpoena files and testimony from the FBI in connection with his prosecution by the State of Maryland for, *inter alia*, first-degree murder, and the state court's subsequent issuance of an order directing the FBI to produce documents and trial testimony arising from an ongoing and unrelated investigation. ECF 3, at 1.

On June 11, 2023, Mario Mireles Ruiz ("Ruiz"), Christian Segovia, and Nicoles Mireles were killed in a shooting in Annapolis, Maryland.[4] ECF 3, at 1; ECF 8, at 2. After the shooting occurred, the Annapolis Police Department requested the FBI's assistance in processing the crime scene, which included deployment of the FBI Laboratory Shooting Reconstruction Team. ECF 3, at 2. The FBI documented its investigative efforts in FBI Case File #343G-BA-3773068 (the "343G Assist File"). *Id.* At the time of the shooting, the FBI and the United States Attorney's

---

actively contributed to the conversation, counsel for Smith noted that they were unable to represent positions different than what was presented in their papers since Smith was not on the call and they could not confer with him. Though this is a civil case, and it is common for a plaintiff or defendant not to be present for court appearances (or calls) in civil matters, given the unique nature of the case and the state defenders' explicit representation that they would prefer to have their client present before making any binding representations, the Court agreed to decide the matter based on what was presented in the court filings. The Court also gave defense counsel additional time to submit an additional filing, which they ultimately chose not to submit.

[4] Three other people were also injured. ECF 3, at 1.

Office for the District of Maryland ("USAO-MD") were apparently investigating Ruiz for potential involvement in drug distribution (the "Investigation"). *Id.* The Investigation—which is ongoing—is documented in FBI Case File #281C-BA-3708548 (the "281C Investigation File"). *Id.*

As a result of the shooting, Smith was charged with 42 crimes, including three counts of first-degree murder, six counts of attempted first-degree murder, three counts of first-degree murder substantially motivated by animus towards persons of Hispanic national origin, and related charges. ECF 8, at 2. Smith is currently awaiting trial in the Circuit Court for Anne Arundel County. *Id.* Smith's defenders have represented that they intend to defend Smith by alleging that the shooting was in self-defense of Smith and his mother. *Id.*

Beginning in January 2024, a series of *Touhy* requests were filed in the underlying state court criminal case. On January 26, 2024, the AAC-SAO sent the FBI a *Touhy* request seeking the production of portions of the 281C Investigation File, and potentially, the testimony of an FBI Agent or other federal officer, to fulfill the State's disclosure requirements under *Brady v. Maryland*, 373 U.S. 83 (1963). ECF 3-1, at 2 (AAC-SAO's first *Touhy* request). On February 12, 2024, the USAO-MD sent a limited *Touhy* authorization letter in response to the first AAC-SAO *Touhy* request. ECF 3-2 (DOJ Response to AAC-SAO *Touhy*), at 2. Specifically, the USAO-MD authorized the disclosure of four written reports from the 281C Investigation File that were "redacted as needed to protect the integrity of the Investigation." *Id.* at 2. The USAO-MD did not, however, authorize "(1) the production of materials, documents, or information relating to or documenting criminal conduct that occurred after Mr. Ruiz's death; or (2) the testimony of current or former FBI agents in the State's case." *Id.* Additionally, the USAO-MD did not authorize the release of, *inter alia*, any documents or information "that may compromise any ongoing federal

4

criminal investigation (including the Investigation)," the "identity of or information indicating the identity of confidential sources or information," or any "documents regarding investigative techniques, target names, informant names, witnesses, defendants, criminal case numbers, or matters that occurred before a federal grand jury." *Id.* at 2–3.

On June 7, 2024, the PD's Office sent the FBI a *Touhy* demand of their own seeking the production of documents, and related trial testimony of two FBI agents, regarding any known gang affiliations of the Mireles family and associates, and their alleged intent to finance violence against, and possibly the murder of, Smith.[5] ECF 3-3 (PD's office *Touhy* request), at 4. On July 11, 2024, the USAO-MD sent a limited *Touhy* authorization letter in response to the PD Office's request. ECF 3-4 (DOJ response to PD *Touhy*), at 2. The FBI produced documents, subject to the terms and conditions in the authorization letter, from the 343G Assist File. *Id.* However, the production of materials, documents, or information from the 281C Investigation File, as well as the requested trial testimony of FBI agents, was not authorized for the same reasons articulated in the USAO-MD's response to the first AAC-SAO *Touhy* request. *See id.*

On March 5, 2024, shortly after the USAO-MD provided the limited authorization in response to the first AAC-SAO *Touhy* request, the PD's Office filed a Motion to Compel Discovery in the state case. *See* ECF 3-5 (state court order dated November 14, 2024), at 2. On November 14, 2024, after a hearing on the Motion to Compel, the Circuit Court for Anne Arundel County entered an order requiring the AAC-SAO to, *inter alia*, "provide the Defense with any relationship between the government (including, but not limited to, the State's Attorney's Office, the Annapolis Police Department, and the Federal Bureau of Investigation), including the nature

---

[5] The PD Office's *Touhy* request referenced both the 343G Assist File and the 281C Investigation File. ECF 3-3.

and circumstances of any agreement, understanding, or representation that may constitute an inducement for the cooperation or testimony of the witness." *Id.* According to the FBI, "this order was not directed at the FBI, and instead imposed obligations on the [AAC-]SAO." ECF 3, at 4–5.

On November 25, 2024, the Circuit Court for Anne Arundel County entered another order directed, in part, at the FBI. ECF 3-6 (state court order dated November 25, 2024), at 2. The November 25 Order provides, in relevant part:

> 1. The Federal Bureau of Investigation provide any and all information regarding the association, participation and/or membership in MS-13 or any criminal organizations known to operate with MS-13 to the extent not previously provided, including but not limited to FBI cases 343G-BA-3773068 and 281C-BA-3708548, for the following individuals: Mario Mireles Ruiz, Luis Enrique Mireles Ruiz, Christian Marlon Segovia, Jr., Nicolas Mireles, Harcinia Ruiz, Judith Abundez, and others present at the events on June 11, 2023 in the 1000 block of Paddington Place, and;
>
> 2. The testimony at trial of Supervisory Special Agent Autumn Brown and Special Agent Sean O'Rourke, and any other agents or special agents involved in the investigation of the association of the decedents and members of the Mireles family with MS-13 and the hit put out on Charles Robert Smith.

*Id.* (emphasis removed).

In response to the two orders discussed above, the AAC-SAO sent a second *Touhy* demand to the FBI, ECF 3-7 (AAC-SAO's second *Touhy* request), at 2, requesting a response on two issues:

> 1) Whether there are any relationships, cooperation agreements or inducements of any kind, in any matter, with the FBI and/or the DOJ with any of the witnesses may be called as witness in our State case against the defendant, and if so provide the general nature and circumstances of any agreement.
>
> 2) If the FBI has any information regarding the association, participation and/or membership in MS-13 or any criminal organizations known to operate with MS-13, including but not limited to FBI cases 343G-BA-3773068 and 281C-BA-3708548, for the following individuals:

6

>    1. Mario Mireles Ruiz, Hispanic Male DOB X/X/95[6]
>    2. Luis Enrique Mireles Ruiz, Hispanic Male DOB X/XX/94
>    3. Christian Marlon Segovia, Jr., Hispanic Male DOB X/XX/98
>    4. Nicolas Mireles DOB X/XX/68, Hispanic Male
>    5. Harcinia Ruiz, Hispanic Female DOB XX/XX/64
>    6. Judith Abundez, Hispanic Female DOB XX/XX/96
>    7. Or any other persons known to have been present at the events on June 11, 2023 in the 1000 block of Paddington Place Annapolis, MD.

*Id.* at 2–3 (emphasis removed). The AAC-SAO noted in the second *Touhy* request that it was "asking for this information so that [it] may satisfy a court order requiring the State exercise due diligence and check with its partners if they [have] information re[garding] gang membership or affiliation [of any witness] or have been induced to cooperate or been given any benefit." *Id.* at 3. In the event the FBI did not have responsive information, the State requested that "a letter in response to [the *Touhy* request] stating so is sufficient." *Id.*

On December 3, 2024, the PD's Office emailed the FBI three subpoenas for the testimony of FBI Supervisory Special Agent Autumn Brown, FBI Special Agent Sean O'Rourke, and FBI Special Agent Michael A. Lipsner, at Smith's trial on February 7, 2025, pursuant to *Touhy*, 340 U.S. 462, or 49 C.F.R. Part 835. ECF 3-8 (investigation subpoenas), at 2–4.

According to the FBI, "the 281C Investigation Subpoenas—relying on the November 25 Order directed to the FBI—seek the disclosure of the same (or very similar) information the FBI has already refused to release in response to the multiple *Touhy* requests lodged by the [AAC]-SAO and the PD's Office." ECF 3, at 6–7. Smith responds that he has reason to believe that "both federal and local law enforcement have failed to fully disclose material information relating to the criminality of the Mireles family and their efforts to violently retaliate against [him]," and that he

---

[6] To protect the privacy of the above-named individuals, the Court redacted each date of birth to reflect only the year. The full dates were provided in the original request.

"successfully argued for disclosure of this information" in front of the state court, which led to the discovery order that the FBI now seeks to quash. ECF 8, at 3.

On December 20, 2024, the FBI removed the state court order pursuant to 28 U.S.C. § 1442(a)(1). ECF 1 (notice of removal). On that same day, the FBI filed the instant Motion. ECF 3. The matter has been fully briefed and the Motion is ripe for adjudication.[7]

## II. ANALYSIS

The FBI argues that the state court "lacks jurisdiction to compel [the agency] to act on the grounds of sovereign immunity." ECF 3, at 7. The FBI further maintains that the "appropriate mechanism to challenge these *Touhy* denial decisions is a separate action in this Court under the Administrative Procedure Act." *Id.* at 14. The FBI asks this Court to quash the November 25, 2024 state court order insofar as it is directed at the FBI, quash the 281C investigation subpoenas issued to three FBI agents on December 3, 2024, and protect the FBI from any further orders against it from the Circuit Court for Anne Arundel County or subpoenas issued to any employee of the FBI involving the 281C investigation file.[8] *Id.* In response, Smith contends that "the Motion to Quash is premature insofar as the state court [] has not exercised coercive power directed at any agency or employee of the [FBI] or [U.S.] Government." ECF 8, at 3. The Court will first evaluate Smith's jurisdictional argument before turning to the merits.

---

[7] The Court also notes that Smith filed a related action, *Smith v. FBI*, No. 25-cv-12-BAH, on January 2, 2025 alleging that the FBI's denial of Smith's *Touhy* request was a violation of the Administrative Procedure Act ("APA"). ECF 1 on Dkt No. 25-12 (complaint). As of the time of the filing of this memorandum opinion, no other action, aside from filing the complaint, has been taken in the companion case. The Court has analyzed the Motion to Quash based solely on the briefing in this case.

[8] According to the FBI, the AAC-SAO "advised the [FBI] it also intends to serve the FBI with trial subpoenas." ECF 1, at 2.

A.      **Removal Jurisdiction**

The Motion is properly before this Court under 28 U.S.C. § 1442(a)(1) removal jurisdiction. The FBI removed the November 25, 2024 state court order and the December 3, 2024 subpoenas[9] pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). ECF 1, at 2. This statute provides that "[a] civil action or criminal prosecution that is commenced in a State court and that is directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to a district court. 28 U.S.C. § 1442(a)(1). The statute confers removal jurisdiction over a state proceeding where removal is "predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989); *see also Arizona v. Manypenny*, 451 U.S. 232, 241 (1981) ("[the statute] ensure[s] a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties."). "The purpose of the statute is to protect federal officers from civil or criminal liability for performing their official duties." *Johnson v. Social Security Admin.*, Civ. No. 18-mc-5, 2018 WL 4677829, at *5 (E.D. Va. June 8, 2019) (citing *North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967)). The Fourth Circuit has held that "the right of removal conferred by § 1442(a)(1) is to be broadly construed." *Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989) (citing *Carr*, 386 F.2d at 129); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (endorsing a broad reading of the statute rather than "a narrow, grudging interpretation"). Accordingly, "federal agencies and agents may remove state court proceedings that seek specific relief against the agency or agent, without removing the

---

[9] To be clear, the subpoenas at issue on removal are the three subpoenas for the testimony of Supervisory Special Agent Autumn Brown, Special Agent Sean O'Rourke, and Special Agent Michael A. Lipsner, at trial on February 7, 2025, which the PD's office emailed to the FBI on December 3, 2024 pursuant to the state court order. *See* ECF 3-8.

9

underlying action." *Johnson*, 2018 WL 4677829, at *3 (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989) (removing subpoena proceedings, but not the underlying civil action)).

Moreover, the United States Court of Appeals for the District of Columbia Circuit has suggested that the filing of a subpoena *duces tecum* on a federal official is sufficient to trigger removal, explaining that:

> [o]nce the subpoena is issued, a clash between state power and the federal official appears to be naturally inevitable. Certainly in any case in which the officer (typically represented by the federal government or Congress) seeks removal, we can assume the officer would be prepared to force the matter to a contempt proceeding—at which point removal is clearly available. Appellant has not suggested any reason why Congress would have wished that confrontation to be actually ignited before removal. We think, therefore, that the officer's "act," declining to comply with the subpoena, can be presumed to occur simultaneously with the removal petition. We do not believe Congress used the terms "civil action," "against," or "act" in the limited fashion that appellant urges, but rather meant to refer to any proceeding in which state judicial civil power was invoked against a federal official.

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995).[10]

In addition, "[t]he Fourth Circuit has permitted removal when a dispute over a federal officer's obligation to testify or produce documents has not progressed to the stage of contempt proceedings." *Johnson*, 2018 WL 4677829, at *3 (citing *Smith v. Cromer*, 159 F.3d 875, 877 (4th

---

[10] In *Brown & Williamson Tobacco Corp.*, the D.C. Circuit examined whether the representatives asserting federal privilege were authorized to remove the proceedings to federal court "having merely been served with [] subpoenas." 62 F.3d at 412. In upholding removal jurisdiction, the court reasoned that, "[a]lthough the federal officer might be thought to have not yet been called to account for his 'action'— refusing to comply with the subpoena—prior to a contempt proceeding, that interpretation seems quite artificial." *Id.* at 415. Thus, the court held it was appropriate to classify a subpoena enforcement proceeding as a civil action against a federal officer, even "in the absence of some sort of proceeding *against* an official." *Id.* at 413, 415 (emphasis in original). Here, the state court entered an order authorizing the issuance of trial subpoenas. The PD's office then issued subpoenas on three FBI agents pursuant to the state court order. As in *Brown*, the Court finds that the FBI's refusal to comply with the subpoenas is enough, even absent a contempt proceeding, to sustain removal jurisdiction.

Cir. 1998)). In *Cromer*, federal officials received a summons to testify at trial, as well as subpoenas *duces tecum*. *Cromer*, 159 F.3d at 877. After the state court ordered the officials to produce the documents, the United States removed the matter to federal district court under 28 U.S.C. § 1442(a)(1) and moved to quash the subpoenas and obtain a protective order. *Id.* at 877–78. Without explicitly addressing whether an action had commenced for the purposes of § 1442(a)(1), the Fourth Circuit held that it was "clear that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity." *Id.* at 879 (citing *Boron Oil Co.*, 873 F.2d at 68). As best this Court can tell, there was no show cause order (or any other enforcement-related action) issued by the trial court in *Cromer*. Rather, removal was based solely on the state court "order[ing] the Government to produce the file[.]" *Id.* at 877–78.

Similarly, other courts have "upheld removal following issuance of a subpoena, whether or not a motion to enforce the subpoena has been filed." *See Johnson*, 2018 WL 4677829, at *4 (collecting cases). "[T]he risk that the federal official might be held in contempt fulfill[s] the prerequisite for removal of a civil action under 28 U.S.C. § 1442(a)(1) that the action be brought 'against' a federal officer or agency; the threat of being held in contempt 'fits under the broad category of actions 'brought against' a federal officer.'" *Ferrell v. Yarberry*, 848 F. Supp. 121, 122 (E.D. Ark. 1994) (citing *Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986)).

Defendant relies on *U.S. v. Williams* to argue that the case should be remanded because there has not been "a commencement of a civil action against the FBI under § 1442(a)(1) because no 'coercive power of the state court' had been exercised to enforce the subpoena." ECF 8, at 4 (citing *U.S. v. Williams*, 170 F.3d 431, 432 (4th Cir. 1999)). The Court notes that Defendant's citation to *Williams* is a citation to an opinion of the Court of Appeals for the Fourth Circuit

11

reviewing the district court's decision to summarily grant a motion to quash after the FBI removed the case for a second time following the state court's show cause order. *Williams*, 170 F.3d at 432. Defendant relies on *Williams* for the proposition that removal is improper in the absence of a state court exercising coercive power over the federal agency. ECF 8, at 4. However, the Court has thoroughly reviewed the Fourth Circuit's opinion in *Williams* and finds that any discussion of the timing of removal from state court is not central to the holding but rather a mere recitation of the procedural posture of the case.[11] To hold otherwise would be to read *Williams* to senselessly hold form over substance. Worse yet, forcing the parties to wait for a contempt finding or similar order before removal might condone gamesmanship where the requesting party purposely fails to seek enforcement of its subpoena until after a trial has begun, thus leaving the federal court scrambling to address critical questions of sovereign immunity on a schedule even tighter than the already condensed one presented here.[12] Considering case law in this circuit and other circuits that upholds

---

[11] The parties have not cited, and the Court has not been able to locate on its own, the first district court decision in *Williams*. As such, the Court cannot ascertain whether there were distinguishable facts from the instant case that led the district court to remand the matter in the first instance. From the Fourth Circuit opinion, however, it is clear that Williams, the party making the request for disclosure from federal officials, did not even attempt to comply with *Touhy* regulations; rather, he moved for an order in the state court directing the issuance of a subpoena, and once the state court granted the motion, the FBI removed the order to federal court. *Williams*, 170 F.3d at 432, 434 n.3. In the absence of the *Williams* district court decision itself, it is unclear whether there were facts or circumstances distinguishable from the instant case. In any event, for the reasons discussed above, the Court declines to adopt Smith's suggested "*Williams* rule" requiring state court coercive action before an action can properly be removed to federal court. A comprehensive review of the case law makes clear that the remand in *Williams*, to the extent it is predicated on the rule Defendant asserts, is anomalous at best.

[12] The Court agrees with the FBI's assertion that adopting such a rule would require federal employees ordered to act by a state court "to sit idly by" until additional coercive state judicial action was taken. ECF 10, at 5. This requirement, as Defendant points out, "would only waste time in the speedy resolution of such disputes." *Id.*; *see also Stephenson v. Nassif*, 160 F. Supp. 3d 884, 888 (E.D. Va. 2015) ("[I]t is pellucid that the broad language of § 1442(a)(1) must be applied in a manner that effectuates the central congressional policy of securing a federal forum

removal jurisdiction under § 1442(a)(1) following the issuance of a subpoena pursuant to a state court order, this Court is satisfied that the Motion is properly before this Court.

The Court finds that the November 25, 2024 state court order directing the FBI to provide certain investigative information and produce FBI agents for trial testimony, as well as the 281C Investigation Subpoenas demanding trial testimony, are clearly acts in a "proceeding in which the state judicial civil power was invoked against a federal official." *Brown & Williamson Tobacco Corp.*, 62 F.3d at 415. Such actions clearly fall within the language and intent of § 1442(a)(1), which the Supreme Court and the Fourth Circuit have repeatedly stated must be broadly construed. *See Willingham*, 395 U.S. at 407. Smith issued subpoenas to the FBI pursuant to the November 25, 2024 state court order, the FBI has clearly expressed its intent to not comply with the state court order or the resulting subpoenas, and the FBI has a colorable federal defense to assert. The Court is thus sufficiently persuaded that the "confrontation" need not "be actually ignited" through a motion to enforce the subpoena, a show cause order, or a contempt order before this Court can exercise removal jurisdiction. *Brown & Williamson Tobacco Corp.*, 62 F.3d at 415. Under these circumstances, removal is proper, and remand would not further the intent of the federal officer removal statute.[13] *See Stauffer v. Miller*, Misc. No. 14-MC-454, 2014 WL 12539886, at *3

---

for persons who assist the federal government in a manner that risks the imposition of state law liability.") (citing *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)).

[13] It also bears noting that a federal court's jurisdiction upon removal is derivative of the state court jurisdiction. *Boron Oil Co.*, 873 F.2d at 70 (citing *Manypenny*, 451 U.S. at 242). As discussed in more detail *infra* Part B.1, the Court finds that the state court lacked jurisdiction to issue the order compelling federal agent testimony at trial because federal agencies enjoy sovereign immunity absent waiver. For the purposes of removal jurisdiction, it would defy common sense to hold that this Court must remand the case to state court and wait until the state court again exceeds its jurisdiction by attempting to enforce the subpoenas before ruling that both the issuance and enforcement of such an order was barred by sovereign immunity. In other words, if the state court does not have the authority to issue the order authorizing the subpoenas, then it does not have the

(D.D.C. July 16, 2014) (finding removal was proper under the statute because the subpoena matter is a civil action in a state court directed at a federal agency and subpoenas are "specifically directed to an officer of the agency who, at the time of the underlying events, was acting under color of her office"). The Court now turns to the merits of the Motion.

### B. Motion to Quash

After reviewing the parties' submissions and thoroughly reviewing the relevant case law, the Court finds no alternative to granting the Motion. Sovereign immunity bars the state court, and this Court on removal jurisdiction, from compelling the FBI to produce documents or requiring FBI agents to testify.[14] Additionally, it is well-established that the only mechanism for judicial review of a final agency action is through the APA. The Court will address each holding in turn.

#### 1. Sovereign Immunity

"The issue of a state court's jurisdiction to compel federal officials to produce documents is [] not new[.]" *Williams*, 170 F.3d at 433. It is well-settled that sovereign immunity prevents federal agencies from being compelled to respond to subpoenas issued by a state court. *Cromer*, 159 F.3d at 883. In *Smith v. Cromer*, the Fourth Circuit held that "an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity." *Id.* at 879 (citation omitted). Unless such immunity is waived, the state court "lacks jurisdiction to proceed against a

---

authority to enforce that order either. Thus, it is difficult to ascertain why the Court would be required to abstain from exercising removal jurisdiction under these circumstances.

[14] The Court notes that in the response in opposition to the Motion, Smith did not address the FBI's claim that sovereign immunity applies to this case. ECF 8. During the January 28, 2025 call, Smith's counsel requested leave to file additional authority addressing this argument. The Court granted that request and provided Smith's counsel until January 30, 2025 to submit additional authority. By email to chambers on that date, Smith's counsel helpfully informed the Court that Smith had decided not to submit additional authority.

14

federal employee acting pursuant to agency direction."[15] *Id.*; *see also Boron Oil Co.*, 873 F.2d at 70 ("The doctrine of sovereign immunity precludes the state court—and the federal court which gained limited jurisdiction upon removal—from exercising jurisdiction to compel [a federal officer] to testify contrary to [the agency's] instructions."). "[S]ubpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign." *COMSAT Corp v. Nat'l Science Found.*, 190 F.3d 269, 277 (4th Cir. 199) (citing *Boron Oil Co.*, 873 F.2d at 71); *see also Boron Oil Co.*, 873 F.2d at 70–71 (explaining that "the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity . . . 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function") (citation omitted).

To be clear, "it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena."[16] *COMSAT Corp*, 190 F.3d at 277. To the extent a litigant seeks to challenge this refusal, such a challenge is both available and proper under the APA because sovereign immunity is waived as to federal agencies under the APA.[17] *See*

---

[15] "[W]here the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal[.]" *Cromer*, 159 F.3d at 879. Thus, this Court does not have jurisdiction to compel the FBI to comply with the state court order or subpoenas. *See Boron Oil Co.*, 873 F.2d at 70 ("The district court exceeded its jurisdiction upon removal, which it derived solely from that of the state court, in compelling [the federal agent] to testify contrary to the direction of the [agency].").

[16] "There is no 'independent privilege to withhold government information or shield federal employees from valid subpoenas' that arises from the regulations." *Lamb v. Wallace*, No. 16-cv-44, 2018 WL 847242, at *5 (E.D.N.C. Feb. 13, 2018) (citations omitted); *see also Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.").

[17] "The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize

15

*id.* at 274 ("[T]he APA waives the federal government's sovereign immunity from suit and permits federal court review of final agency actions.").

The FBI, as an executive agency, is protected by sovereign immunity absent a waiver. *See Williams*, 170 F.3d at 433–34 (holding that sovereign immunity bars the state court from compelling the FBI to produce documents subpoenaed by a defendant in the course of a state criminal prosecution). Additionally, it is clear that the FBI agents' testimony at the state court proceeding is sought because of the knowledge they acquired in the course of their official duties. *See* ECF 3-6, at 2. Therefore, because the FBI is protected by sovereign immunity, the agency cannot be compelled to respond to the state court order or the subpoenas issued by the PD's office pursuant to the state court order, absent a waiver. Smith has not pointed to any waiver, and the FBI has admitted none. Thus, sovereign immunity applies to this case.

The Court appreciates what is at stake in the underlying state court criminal prosecution and acknowledges that Smith is unquestionably entitled to exercise his constitutional rights to defend against the charges brought against him in state court. To the extent that the FBI is, or appears to be, in possession of *Brady* material and Smith believes that the FBI unlawfully withheld this material in denying his *Touhy* request, Smith is entitled to challenge this decision through an action under the APA. *See Williams*, 170 F.3d at 434 (noting that if a defendant is "dissatisfied with the agency's response to the request, the defendant is not without recourse," and explaining that "[t]he proper method for judicial review of the agency's final decision pursuant to its regulations is through the [APA]"); *see also COMSAT Corp*, 190 F.3d at 274 (explaining that

---

governmental involvement in controversial matters unrelated to official business." *Boron Oil Co.*, 873 F.2d at 70.

16.

administrative recourse under the APA provides "the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas") (citing *Cromer*, 159 F.3d at 881).

Simply put, this action is not in the correct posture for Smith to litigate his claim. *Utah v. Ricks* stands for the proposition that *Touhy* applies even when the underlying action is a criminal proceeding. 16-cv-462, 2016 WL 6090848, at *2 (D. Utah Oct. 18, 2016). The court in *Ricks* explicitly held that the agency cannot be forced to comply with a state court order that contradicts the agency's non-disclosure decision under *Touhy*, even if the defendant invokes his constitutional rights and argues that constitutional rights supersede sovereign immunity. *Id.*; *see also State v. Lueck*, 16-cv-130, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016) ("[T]he United States' sovereign immunity is implicated in this case and Defendant's sole remedy to substantively challenge the SSA's denial of his *Touhy* request is through a cause of action under the APA, which fact is unaltered by Defendant's Sixth Amendment arguments.").

There can be no doubt that the proper mechanism for obtaining judicial review of an agency's refusal to disclose documents and information is through the APA.[18] "[T]he APA waives the federal government's sovereign immunity from suit and permits federal court review of final agency actions." *COMSAT Corp.*, 190 F.3d at 274. Outside of an APA action, sovereign immunity bars the federal court from reviewing an agency's final action or otherwise compelling an agency to act contrary to its decision on a *Touhy* request. *See Boron Oil Co.*, 873 F.2d at 69 ("*Touhy* is part of an unbroken line of authority which directly supports [the federal employee's] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal

---

[18] Under the APA, district courts have jurisdiction to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C.A. § 706(2)(A)-(B). In addition, the APA vests the district court with authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.A. § 706(1).

employer's instructions under valid agency regulations."). Accordingly, the state court lacked jurisdiction to compel the FBI to produce documents or require its agents to appear and testify in a state court action to which the FBI is not a party. As the Court noted in *Lueck*, "the Court's decision to grant the [] Motion to Quash at present in no way precludes Defendant from pursuing those administrative remedies available to him." *Lueck*, 2016 WL 11774020, at *4. Indeed, as previously noted, Smith has a different claim available to him: a separate APA action pending against the FBI. *See Smith v. FBI*, No. 25-cv-12-BAH.

Based on the doctrine of sovereign immunity, the FBI and its agents cannot be compelled to disclose investigatory files or to testify at trial when FBI regulations prohibit the production of such records or testimony. *See Touhy*, 340 U.S. at 468 (holding federal agent could not be compelled to produce records where his agency had prohibited the production pursuant to valid federal regulations). As it stands, this case is not appropriately postured for the Court to consider the validity of the FBI's refusal to produce documents and allow testimony. As such, the Motion must be granted.[19]

## III. CONCLUSION

For the foregoing reasons, the FBI's Motion to Quash, ECF 3, is granted.

A separate implementing Order will issue.

Dated: February 3, 2025

/s/
Brendan A. Hurson
United States District Judge

---

[19] As the Court indicated during the teleconference on January 28, 2025, this opinion is not intended to address any issues beyond the documents and testimony that fall within the purview of the state court's November 25, 2024 order and the three subpoenas issued by the PD's office pursuant to that order. To the extent the FBI has authorized other testimony and/or *Touhy* disclosures in the underlying state court case, this opinion shall have no effect on those disclosures or the possible use of that information at trial. The Court also notes that while the FBI requests a protective order prohibiting the state court from issuing any additional orders or subpoenas related to the 281C Investigation, the Court declines to issue a protective order because the accompanying implementing order provides the necessary relief.